**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
<u>**(Baltimore Division)**</u>

| | | |
|---|---|---|
| In re: | * | |
| **CONSTANCE M. RATHELL** | * | **Case No. 19-18716- (TJC)** |
| | * | |
| **Debtor.** | * | **(Chapter 13)** |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**OBJECTION OF 1880 BANK TO**
<u>**CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN**</u>

1880 Bank (f/k/a The National Bank of Cambridge) ("Lender"), by its undersigned counsel and pursuant to 11 U.S.C. § 1325, hereby objects to confirmation of Constance M. Rathell's (the "Debtor") proposed Chapter 13 Plan (Doc. No. 15) (the "Plan") because the Plan does not meet the requirements set forth in 11 U.S.C. § 1325(a) of the United States Bankruptcy Code.  In support of its Objection, Lender states as follows:

**GROUNDS FOR OBJECTION TO CONFIRMATION**

1.      The Plan is not feasible as it relates to the treatment of a loan from Lender to Rathell Farm Equipment Company, Inc. (the "Borrower") in the original principal amount of $750,000 (the "Loan").

2.      Repayment of the Loan is evidenced by a promissory note from the Borrower to the Lender dated April 10, 2014 (as amended, modified and/or renewed, the "Note").  A true and accurate copy of the Note is attached hereto as **Exhibit A**.

3.      The Debtor guaranteed the Borrower's performance under a Note pursuant to a guaranty agreement dated April 10, 2014 (as amended, modified, or renewed, the "Guaranty"). A true and accurate copy of the Guaranty is attached hereto as **Exhibit B**.

4.     The Guaranty is secured by an indemnity deed of trust (the "Deed of Trust") from the Debtor and other grantors for the benefit of Lender dated, which is recorded among the Land Records of Talbot County, Maryland at Liber 2166, folio 130 and re-recorded in the Land Records of Talbot County, Maryland at Liber 2433, folio 400 (the "Deed of Trust") encumbering the real property known as 12681 Old Skipton Road, Queen Anne, Maryland 21657 (the "Property").   A true and accurate copy of the Deed of Trust is attached hereto as **Exhibit C**.

5.     The Debtor and Borrower failed to make payments due under the Note and Guaranty from December 2018 and continuing thereafter. Accordingly, the Lender accelerated the entire balance due thereunder effective March 13, 2019.  A true and accurate copy of the foregoing acceleration notice is attached hereto as **Exhibit D.**

6.     On or about August 30, 2019, Lender filed a Proof of Claim evidencing the Debtor's pre-petition indebtedness to Lender in the amount of $443.617.82 (the "Proof of Claim").

7.     In the Plan, the Debtor proposes to pay Lender in full upon a sale of the Property without specification as to timing. The Debtor has yet to put forth any plan or propose any course of action to sell the Property.  In fact, the Debtor has not even requested bankruptcy approval to hire a broker to market the Property.

8.     Section 1325(a)(6) of the Bankruptcy Code requires that a Chapter 13 plan be feasible in order to be confirmed.  A Chapter 13 Plan is not feasible if its funding is speculative and the timing of payment is vague.  *In re Moffett,* 455 B.R. 718, 723-724 2011 ("This Court has also held that plans that are vague about the timing and means of payment are not confirmable").  Here, the Plan does not identify any time period in which the Debtor intends to sell the Property,

- 2 -

and the Debtor has yet to implement necessary procedures to begin the marketing and sale process.  Accordingly, the Plan is not feasible and thus not confirmable.

**WHEREFORE, Lender respectfully requests that this Court enter an Order:**

(A)    denying confirmation of the Debtor's proposed Chapter 13 Plan without leave to amend; and

(B)    granting such other and further relief as this Court deems proper and just.

Date:  August 30, 2019                    Respectfully submitted,

/s/ Adam M. Lynn
Adam M. Lynn
Federal Bar No. 29254
McAllister, DeTar, Showalter & Walker.
100 N. West Street
Easton, Maryland 21601
(410) 820-0257
alynn@mdswlaw.com
*Counsel for 1880 Bank*

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 30th day of August, 2019 a copy of the foregoing Objection to the Debtor's Chapter 13 Plan was served on all registered to receive notices in this case electronically via this Court's CM/ECF system and, as indicated below, mailed, postage prepaid to the following:

**Joseph M. Selba**
Tydings & Rosenberg, LLP
1 East Pratt St., Suite 901
Baltimore, MD 21202
*Attorney for Debtor*

**Robert S. Thomas, II**
300 E. Joppa Road, Suite 409
Towson, MD 21286
*Chapter 13 Trustee*

**Constance M. Rathell**
545 Cynwood Drive
Easton, MD 21601


<u>/s/ Adam M. Lynn</u>
Adam M. Lynn

- 4 -

4825-3507-9074, v. 1

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $750,000.00 | 04-10-2014 | | | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

**Borrower:** Rathell Farm Equipment Company, Inc.
12681 Old Skipton Road
Queen Anne, MD 21657

**Lender:** The National Bank of Cambridge
Main Office
304 High Street
Cambridge, MD 21613

COPY

**Principal Amount: $750,000.00**      **Initial Rate: 4.250%**      **Date of Note: April 10, 2014**

**PROMISE TO PAY.** Rathell Farm Equipment Company, Inc. ("Borrower") promises to pay to The National Bank of Cambridge ("Lender"), or order, in lawful money of the United States of America, on demand, the principal amount of Seven Hundred Fifty Thousand & 00/100 Dollars ($750,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. Borrower will pay regular quarterly payments of all accrued unpaid interest due as of each payment date, beginning July 10, 2014, with all subsequent interest payments to be due on the same day of each quarter after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest as shown on the most recent statement or bill provided to Borrower (if no statement or bill has been provided for any reason, it shall be applied to the unpaid interest accrued since the last payment); then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the The base rate on corporate loans posted by at least 70% of the 10 largest U.S. banks known as the Wall Street Journal U.S. Prime Rate. The result of this calculation will be rounded to the nearest 0.010. (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute Index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each Day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.250% per annum. Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 1.000 percentage point over the Index, resulting in an initial rate of 4.250% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the lesser of 4.250% per annum or the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default, unless otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: The National Bank of Cambridge, 304 High Street Cambridge, MD 21613.

**LATE CHARGE.** If a regularly scheduled interest payment is 15 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment or $5.00, whichever is greater. If Lender demands payment of this loan, and Borrower does not pay the loan in full within 15 days after Lender's demand, Borrower also will be charged either 5.000% of the sum of the unpaid principal plus accrued unpaid interest or $5.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**LENDER'S RIGHTS.** Upon Lender's demand, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest, together with all other applicable fees, costs and charges, if any, immediately due and payable, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Subject to any limits under applicable law, upon default, Borrower agrees to pay Lender's attorneys' fees and all of Lender's other collection expenses, whether or not there is a lawsuit, including without limitation legal expenses for bankruptcy proceedings.

**JURY WAIVER.** LENDER AND BORROWER EACH HEREBY WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH LENDER OR BORROWER MAY BE PARTIES, ARISING OUT OF, OR IN ANY WAY PERTAINING TO, THIS NOTE. IT IS AGREED THAT THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTIONS OR PROCEEDINGS. THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY LENDER AND BORROWER, AND LENDER AND BORROWER EACH HEREBY REPRESENT THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. BORROWER FURTHER REPRESENTS THAT BORROWER HAS BEEN REPRESENTED IN THE SIGNING OF THIS NOTE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED OF BORROWER'S OWN FREE WILL, AND THAT BORROWER HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Maryland without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Maryland.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Dorchester County, State of Maryland.

**CONFESSED JUDGMENT.** UPON THE OCCURRENCE OF A DEFAULT, BORROWER HEREBY AUTHORIZES ANY ATTORNEY DESIGNATED BY LENDER OR ANY CLERK OF ANY COURT OF RECORD TO APPEAR FOR BORROWER IN ANY COURT OF RECORD AND CONFESS JUDGMENT WITHOUT PRIOR HEARING AGAINST BORROWER IN FAVOR OF LENDER FOR, AND IN THE AMOUNT OF, THE UNPAID BALANCE OF THE PRINCIPAL AMOUNT OF THIS NOTE, ALL INTEREST ACCRUED AND UNPAID THEREON, ALL OTHER AMOUNTS PAYABLE BY BORROWER TO LENDER UNDER THE TERMS OF THIS NOTE OR ANY OTHER AGREEMENT, DOCUMENTS, INSTRUMENT EVIDENCING, SECURING OR GUARANTYING THE OBLIGATIONS EVIDENCED BY THIS NOTE, COSTS OF SUIT, AND ATTORNEYS' FEES OF FIFTEEN PERCENT (15%) OF THE UNPAID BALANCE OF THE PRINCIPAL AMOUNT OF THIS NOTE AND INTEREST THEN DUE HEREUNDER.

Borrower hereby releases, to the extent permitted by applicable law, all errors and all rights of exemption, appeal, stay of execution, inquisition, and other rights to which Borrower may otherwise be entitled under the laws of the United States or of any state or possession of the United States now in force and which may hereafter be enacted. The authority and power to appear for and enter judgment against Borrower shall not be exhausted by one or more exercises thereof or by any imperfect exercise thereof and shall not be extinguished by any judgment entered pursuant thereto. Such authority may be exercised on one or more occasions or from time to time in the same or different jurisdictions as often as Lender shall deem necessary or desirable, for all of which this Note shall be a sufficient warrant.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $15.00 if Borrower makes a payment on Borrower's loan and the check with which Borrower pays is dishonored on its second presentment.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein: inventory, chattel paper, accounts, equipment, general intangibles and consumer goods described in a Commercial Security Agreement dated April 10, 2014.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note may be requested either orally or in writing by



EXHIBIT
A
tabbies

# PROMISSORY NOTE
## (Continued)

Borrower or as provided in this paragraph. Lender may, but need not, require that all oral requests be confirmed in writing. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized, except as provided in this paragraph, to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: Jeffrey D. Rathell, Sr., President of Rathell Farm Equipment Company, Inc. Subject to Review and Approval by the Loan Officer. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**CONSENT TO JURISDICTION.** Borrower irrevocably submits to the jurisdiction of any state or federal court sitting in the State of Maryland over any suit, action, or proceeding arising out of or relating to this Note. Borrower irrevocably waives, to the fullest extent permitted by law, any objection that Borrower may now or hereafter have to the laying of venue of any such suit, action, or proceeding brought in any such court and any claim that any such suit, action, or proceeding brought in any such court has been brought in an inconvenient forum. Final judgment in any such suit, action, or proceeding brought in any such court shall be conclusive and binding upon Borrower and may be enforced in any court in which Borrower is subject to jurisdiction by a suit upon such judgment provided that service of process is effected upon Borrower as provided in this Note or as otherwise permitted by applicable law.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: The National Bank of Cambridge 304 High Street Cambridge, MD 21613.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Maryland (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.

**APPLICABLE LENDING LAW.** To the extent not preempted by federal law, this loan is being made under the terms and provisions of Subtitle 9 of Title 12 of the Maryland Commercial Law Article.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

BORROWER:

RATHELL FARM EQUIPMENT COMPANY, INC.

By: _____ (Seal)
    Jeffrey D. Rathell, Sr., President of Rathell Farm
    Equipment Company, Inc.

LENDER:

THE NATIONAL BANK OF CAMBRIDGE

X _____
    Kathy Coursey, Senior Vice-President

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| | | | | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Rathell Farm Equipment Company, Inc.
12681 Old Skipton Road
Queen Anne, MD 21657

**Lender:** The National Bank of Cambridge
Main Office
304 High Street
Cambridge, MD 21613

**Guarantor:** Constance M. Rathell

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any

tabbies®

EXHIBIT

B

# COMMERCIAL GUARANTY
## (Continued)

act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (1) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (2) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (3) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any Collateral for the Indebtedness; or (4) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations. Guarantor acknowledges and agrees that Guarantor's obligations under this Guaranty shall apply to and continue with respect to any amount paid to Lender which is subsequently recovered from Lender for any reason whatsoever (including without limitation as a result of bankruptcy, insolvency or fraudulent conveyance proceeding), notwithstanding the fact that all or a part of the Indebtedness may have been previously paid, or this Guaranty may have been terminated, or both.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

Guarantor's Understanding With Respect To Waivers. Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

Collateral. This Guaranty is secured by 2nd IDOT on 12681 Old Skipton Rd, Queen Anne, MD.

Right of Setoff. To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

Subordination of Borrower's Debts to Guarantor. Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower, provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

CONFESSED JUDGMENT. UPON THE OCCURRENCE OF A DEFAULT ON THE INDEBTEDNESS, GUARANTOR HEREBY AUTHORIZES ANY ATTORNEY DESIGNATED BY LENDER OR ANY CLERK OF ANY COURT OF RECORD TO APPEAR FOR GUARANTOR IN ANY COURT OF RECORD AND CONFESS JUDGMENT WITHOUT PRIOR HEARING AGAINST GUARANTOR IN FAVOR OF LENDER FOR, AND IN THE AMOUNT OF, THE UNPAID BALANCE OF THE PRINCIPAL AMOUNT OF THIS GUARANTY, ALL INTEREST ACCRUED AND UNPAID THEREON, ALL OTHER AMOUNTS PAYABLE BY GUARANTOR TO LENDER UNDER THE TERMS OF THIS GUARANTY OR ANY OTHER AGREEMENT, DOCUMENTS, INSTRUMENT EVIDENCING, SECURING OR GUARANTYING THE OBLIGATIONS EVIDENCED BY THIS GUARANTY, COSTS OF SUIT, AND ATTORNEYS' FEES OF FIFTEEN PERCENT (15%) OF THE UNPAID BALANCE OF THE PRINCIPAL AMOUNT OF THIS GUARANTY AND INTEREST THEN DUE HEREUNDER.

Guarantor hereby releases, to the extent permitted by applicable law, all errors and all rights of exemption, appeal, stay of execution, inquisition, and other rights to which Borrower may otherwise be entitled under the laws of the United States or of any state or possession of the United States now in force and which may hereafter be enacted. The authority and power to appear for and enter judgment against Guarantor shall not be exhausted by one or more exercises thereof or by any imperfect exercise thereof and shall not be extinguished by any judgment entered pursuant thereto. Such authority may be exercised on one or more occasions or from time to time in the same or different jurisdictions as often as Lender shall deem necessary or desirable, for all of which this Guaranty shall be a sufficient warrant.

Miscellaneous Provisions. The following miscellaneous provisions are a part of this Guaranty:

Amendments. This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

Attorneys' Fees; Expenses. Guarantor agrees that if Lender hires an attorney to help enforce this Guaranty, Guarantor will pay, subject to any limits under applicable law, Lender's attorneys' fees and all of Lender's other collection expenses, whether or not there is a lawsuit and including without limitation additional legal expenses for bankruptcy proceedings.

Caption Headings. Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

Governing Law. This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Maryland without regard to its conflicts of law provisions.

Choice of Venue. If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Dorchester County, State of Maryland.

Integration. Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

Interpretation. In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any Indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

JURY WAIVER. LENDER AND BORROWER AND GUARANTOR EACH HEREBY WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH LENDER OR BORROWER OR GUARANTOR MAY BE PARTIES, ARISING OUT OF, OR IN ANY WAY PERTAINING TO, THIS GUARANTY. IT IS AGREED THAT THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTIONS OR PROCEEDINGS. THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY LENDER AND BORROWER AND GUARANTOR, AND LENDER AND BORROWER AND GUARANTOR EACH HEREBY REPRESENT THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. BORROWER AND GUARANTOR EACH FURTHER REPRESENT THAT EACH HAS BEEN REPRESENTED IN THE SIGNING OF THIS GUARANTY AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED OF EACH'S OWN FREE WILL, AND THAT EACH HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.

Notices. Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, if hand delivered, when actually received by telefacsimile (unless otherwise

## COMMERCIAL GUARANTY
### (Continued)

<div align="right">Page 3</div>

required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

No Waiver by Lender. Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

Successors and Assigns. Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their heirs, personal representatives, successors and assigns.

Definitions. The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

Borrower. The word "Borrower" means Rathell Farm Equipment Company, Inc. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

Guarantor. The word "Guarantor" means everyone signing this Guaranty, including without limitation Constance M. Rathell, and in each case, any signer's successors and assigns.

Guaranty. The word "Guaranty" means this guaranty from Guarantor to Lender.

Indebtedness. The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

Lender. The word "Lender" means The National Bank of Cambridge, its successors and assigns.

Note. The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED APRIL 10, 2014.

THIS GUARANTY IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS GUARANTY IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GUARANTOR:

X _Constance M. Rathell_____ (Seal)
Constance M. Rathell

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Maryland_____ )
                                 ) SS
COUNTY OF _Talbot_____ )

On this day before me, the undersigned Notary Public, personally appeared Constance M. Rathell, to me known to be the individual described in and who executed the Commercial Guaranty, and acknowledged that he or she signed the Guaranty as his or her free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this _10_ day of _April_, 20 _14_.

By _Mary J. Braham_____    Residing at _Centreville, MD_____

Notary Public in and for _Q.A. Co., MD_    My commission expires _11/8/14_

MARY T. BRAHAM
NOTARY
PUBLIC
QUEEN ANNE'S COUNTY, MD

2.

RECORDATION REQUESTED BY:
The National Bank of Cambridge
Main Office
304 High Street
Cambridge, MD 21613

WHEN RECORDED MAIL TO:
The National Bank of Cambridge
Main Office
304 High Street
Cambridge, MD 21613

117 BAY STREET
EASTON, MD 21601

TALBOT COUNTY FINANCE OFFICE
RECORDATION TAX
AMT: $0
DATE: 4/16/2014
INITIALS: Deborah
Prop ID: 04-152999

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

## INDEMNITY

## DEED OF TRUST

THIS INDEMNITY DEED OF TRUST is dated April 10, 2014, among Charles R. Rathell, III, Jeffrey D. Rathell, Sr. and Constance M. Rathell, not personally but as Trustees on behalf of The Residuary Trust U/W of Charles R. Rathell, Jr.; and Constance M. Rathell ("Grantor"); The National Bank of Cambridge, whose address is Main Office, 304 High Street, Cambridge, MD 21613 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Kim C. Liddell, whose address is 304 High Street, Cambridge, MD 21613 and E. Thomas Merryweather, whose address is 204 High Street, Cambridge, MD 21613 (referred to below as "Trustee").

RECITALS. Lender as of the date of this Indemnity Deed of Trust has made a loan to Borrower in the principal amount of $750,000.00. Grantor has guaranteed all or part of Borrower's obligations of payment and performance with respect to the loan pursuant to a Guaranty of even date herewith and has agreed to secure the Guaranty by the execution of this Indemnity Deed of Trust.

CONVEYANCE AND GRANT. For valuable consideration, Grantor irrevocably grants and conveys to Trustee, in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Grantor's present and future right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Talbot County, State of Maryland:

See Attached Exhibit A

The Real Property or its address is commonly known as 12681 Old Skipton Road, Queen Anne, MD 21657. The Real Property tax identification number is District 04; Account Number 152999; Map 0004; Grid 0018.

CROSS-COLLATERALIZATION. In addition to the Guaranty, this Deed of Trust secures all obligations, debts and liabilities, plus interest thereon, of either Grantor or Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

REVOLVING LINE OF CREDIT. This Indemnity Deed of Trust secures the Indebtedness including, without limitation, a guaranty of a revolving line of credit, under which Lender may make advances to Borrower so long as Borrower complies with all the terms of the Note.

Grantor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS INDEMNITY DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PERFORMANCE OF A GUARANTY FROM GRANTOR TO LENDER, AND DOES NOT DIRECTLY SECURE THE OBLIGATIONS DUE UNDER UNDER THE NOTE AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THIS INDEMNITY DEED OF TRUST. THIS INDEMNITY DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

GRANTOR'S REPRESENTATIONS AND WARRANTIES. Grantor warrants that: (a) Grantor has the full power, right, and authority to enter into this Deed of Trust and to hypothecate the Property; (b) the provisions of this Deed of Trust do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (c) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (d) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Deed of Trust, Grantor shall strictly perform all of Grantor's obligations under the Guaranty and under this Deed of Trust.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Lender and Grantor agree that Grantor's possession and use of the Property shall be governed by the following provisions:

Possession and Use. Until Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

Duty to Maintain. Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Compliance With Environmental Laws. Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be

EXHIBIT
C
tabbies

LIBER2 I 66 FOLIO I 30

affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Maryland law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due, except for the Existing Indebtedness referred to below, and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a fair value basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may require. Policies shall be written in form, amounts, coverages and basis acceptable to Lender and issued by a company or companies acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Deed of Trust, to the extent compliance with the terms of this Deed of Trust would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Deed of Trust for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Grantor's failure to comply with any obligation to maintain Existing Indebtedness in good standing as required below, or to discharge or pay when due any amounts Grantor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the

LIBER2 1 6 6 FOLIO 1 3 1

Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; or (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note. The Deed of Trust will also secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Grantor warrants specially that: (a) Grantor holds good and marketable title to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Deed of Trust:

**Existing Lien.** The lien of this Deed of Trust securing the Indebtedness may be secondary and inferior to an existing lien. Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Grantor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Deed of Trust by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as Default, and Lender may exercise any or all of its available remedies for Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place convenient to Lender and make it available to Lender promptly following Lender's request to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Guaranty, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph. This power of attorney is coupled with an interest and shall not be affected by any actual disability of Grantor.

**FULL PERFORMANCE.** If Grantor shall strictly perform all of Grantor's obligations under the Guaranty and Grantor otherwise performs all the obligations imposed upon Grantor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall

execute and deliver to Grantor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Any reconveyance fee required by law shall be paid by Grantor, if permitted by applicable law.

**DEFAULT.** Default will occur if payment in full is not made when due.

**RIGHTS AND REMEDIES ON DEFAULT.** If Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Deed of Trust, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Borrower would be required to pay.

**Foreclosure.** With respect to all or any part of the Real Property, (a) the Trustee shall have the right to invoke the power of sale and Grantor hereby assents to the passage of a decree for the sale of the Real Property, and (b) Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law. Upon the sale of the Real Property, the proceeds shall be applied as follows: (a) first, to pay all costs, charges, and expenses attending the execution of this trust or any sale relevant hereto, including without limitation reasonable counsel fees to the attorneys representing the Trustee or Lender or both and a trustee's commission equal to the commission allowed trustees for making sales of property under decrees of the equity court having jurisdiction; (b) second, to pay any amounts expended or advanced by Lender to discharge obligations of Grantor under this Indemnity Deed of Trust and then to the payment of the Indebtedness owed with respect to the Guaranty, if such Indebtedness has matured and is due under the terms of the Guaranty, or if not, to be held in a demand account as a pledge fund (which shall be interest bearing for the benefit of the Grantor) up to the maximum sum, as determined by Lender, which could be due from Grantor under the Guaranty as security for the Indebtedness owed with respect to the Guaranty, and to be applied to the Indebtedness owed with respect to the Guaranty after a default under the Guaranty; and (c) the balance remaining, if any, shall be paid to Grantor, or to whomsoever shall be judicially determined to be entitled to the same.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Without notice to Grantor, Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness and Grantor hereby consents to the appointment of such a receiver. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount and whether or not such receivership is incidental to a proposed sale of the Property or otherwise. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Grantor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Grantor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, at any time hereafter and without prior notice and without specifying any reason, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office in the jurisdiction where this Deed of Trust has been recorded. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Grantor, the book and page where this Deed of Trust is recorded, and the name of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Power to Act Separately.** If more than one Trustee is named in this Deed of Trust, any Trustee may act alone, without the joinder of any other Trustee, to exercise any or all the powers given to the Trustees collectively in this Deed of Trust or by applicable law.

**NOTICES.** Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, if hand delivered, when actually received by telefacsimile (unless

**INDEMNITY DEED OF TRUST**
**(Continued)**

otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, and as certified mail postage prepaid, bearing a postmark from the United States Postal Service, directed to the addresses shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Incorporation by Reference.** The terms, conditions, and provisions of the Guaranty and Related Documents are incorporated by reference in this Deed of Trust to the same extent as if set forth in full in this Deed of Trust. Should any of the terms, conditions, and provisions of the Guaranty or of any other Related Document conflict with the terms, conditions, or provisions of this Deed of Trust, the Trustee or Lender shall select which of the terms, conditions, and provisions shall govern and control.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Maryland without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of Maryland.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Dorchester County, State of Maryland.

**Joint and Several Liability.** All obligations of Grantor under this Deed of Trust shall be joint and several, and all references to Grantor shall mean each and every Grantor. This means that each Grantor signing below is responsible for all obligations in this Deed of Trust.

**JURY WAIVER. LENDER AND GRANTOR EACH HEREBY WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH LENDER OR GRANTOR MAY BE PARTIES, ARISING OUT OF, OR IN ANY WAY PERTAINING TO, THIS DEED OF TRUST. IT IS AGREED THAT THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTIONS OR PROCEEDINGS. THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY LENDER AND GRANTOR, AND LENDER AND GRANTOR EACH HEREBY REPRESENT THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. GRANTOR EACH FURTHER REPRESENTS THAT EACH HAS BEEN REPRESENTED IN THE SIGNING OF THIS DEED OF TRUST AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED OF EACH'S OWN FREE WILL, AND THAT EACH HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.**

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their heirs, personal representatives, successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means The National Bank of Cambridge, and its successors and assigns.

**Borrower.** The word "Borrower" means Rathell Farm Equipment Company, Inc. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Deed of Trust.

**Grantor.** The word "Grantor" means Constance M. Rathell; and The Residuary Trust U/W of Charles R. Rathell, Jr..

**Guaranty.** The word "Guaranty" means the guaranty from Grantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the

LIBER2166 FOLIO134

Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all obligations of Grantor under the Guaranty, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the obligations under the Guaranty and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means The National Bank of Cambridge, its successors and assigns.

**Note.** The word "Note" means the promissory note dated April 10, 2014, **in the original principal amount of $750,000.00** from Borrower to Lender, together with all modifications of and renewals, replacements, and substitutions for the promissory note or agreement. NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means Kim C. Liddell, whose address is 304 High Street, Cambridge, MD  21613 and E. Thomas Merryweather, whose address is 204 High Street, Cambridge, MD  21613 and any substitute or successor trustees.

EACH GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS INDEMNITY DEED OF TRUST, AND EACH GRANTOR AGREES TO ITS TERMS.

THIS DEED OF TRUST IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS DEED OF TRUST IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GRANTOR:

_____ (Seal)
Constance M. Rathell, Individually

THE RESIDUARY TRUST U/W OF CHARLES R. RATHELL, JR.

By: _____ TRUSTEE (Seal)     By: _____ Trustee (Seal)
Charles R. Rathell, III, Trustee of The Residuary          Jeffrey D. Rathell, Sr., Trustee of The Residuary
Trust U/W of Charles R. Rathell, Jr.                           Trust U/W of Charles R. Rathell, Jr.

By: _____ (Seal)
Constance M. Rathell, Trustee of The Residuary
Trust U/W of Charles R. Rathell, Jr.

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF __Maryland__ )
                                      ) SS
COUNTY OF __Talbot__ )

On this day before me, the undersigned Notary Public, personally appeared **Constance M. Rathell**, to me known to be the individual described in and who executed the Indemnity Deed of Trust, and acknowledged that he or she signed the Deed of Trust as his or her free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this __10__ day of __Apr.l__, 20 __14__.

By _____     Residing at __Centreville MD__

Notary Public in and for __Q.A.Co. MD__     My commission expires __11/3/18__

*(Notary seal: MARY T. BRANHAM, NOTARY PUBLIC, QUEEN ANNE'S COUNTY, MD)*

---

## TRUST ACKNOWLEDGMENT

STATE OF __Maryland__ )
                                      ) SS
COUNTY OF __Talbot__ )

On this __10__ day of __Apr.l__, 20 __14__, before me, the undersigned Notary Public, personally appeared Charles R. Rathell, III, Trustee of The Residuary Trust U/W of Charles R. Rathell, Jr.; Jeffrey D. Rathell, Sr., Trustee of The Residuary Trust U/W of Charles R. Rathell, Jr.; and Constance M. Rathell, Trustee of The Residuary Trust U/W of Charles R. Rathell, Jr., and known to me to be authorized trustees or agents of the trust that executed the Indemnity Deed of Trust and acknowledged the Deed of Trust to be the free and voluntary act and deed of the trust, by authority set forth in the trust documents or, by authority of statute, for the uses and purposes therein mentioned, and on oath stated that they are authorized to execute this Deed of Trust and in fact executed the Deed of Trust on behalf of the trust.

By _____     Residing at __Centreville MD__

Notary Public in and for __Q.A.Co. MD__     My commission expires __11/3/14__

*(Notary seal: MARY T. BRANHAM, NOTARY PUBLIC, QUEEN ANNE'S COUNTY, MD)*

## LENDER CERTIFICATION

THIS IS TO CERTIFY that the foregoing Indemnity Deed of Trust was prepared by The National Bank of Cambridge, the party secured by the Indemnity Deed of Trust.

The National Bank of Cambridge

By: _____

Annette L. Harrison

Its: **Assistant Vice President**

## AFFIDAVIT OF CONSIDERATION

STATE OF _Maryland_ )
) SS
_County_ OF _Talbot_ )

I HEREBY CERTIFY that on this _10_ day of _April_, 20_17_ before me, the undersigned, a Notary Public of the _State of Maryland_ in and for _County of Queen Anne_, personally appeared _Keith Crosson_, the agent of Lender, known to me or satisfactorily proven, who made oath or affirmation in due form of law that the consideration recited in the Deed of Trust is true and bona fide as set forth therein that he or she is the agent of Lender, and that he is thereunto duly authorized to make this affidavit.

WITNESS my hand and Notarial Seal.

_____
Notary Public

My Commission Expires: _11/3/19_

MARY T. BRANHAM
NOTARY
PUBLIC
QUEEN ANNE'S COUNTY MD

## REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all Indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to: _____.

Date: _____          Beneficiary: _____

By: _____

Its: _____

LASER PRO Lending, Ver. 13.4.0.034 Copr. Harland Financial Solutions, Inc. 1997, 2014. All Rights Reserved. - MD H:\CFI\LPL\G01.FC TR-374 PR-7

# EXHIBIT A

LEGAL DESCRIPTION

Tract No. 1:

12681 OLD SKIPTON ROAD, CORDOVA, MARYLAND

PARCEL NO. 1

ALL that lot or parcel of ground, a portion of Quimby Village, situate, lying and being at Skipton, Chapel District of Talbot County, Maryland, and described according to a Certificate of Survey made by Kastenhuber and Anderson, Civil Engineers and Surveyors, dated November 11, 1953, as follows:

BEGINNING at an iron pipe driven on the Easterly side-line of the State Boulevard leading from Cambridge to the Chesapeake Bay Bridge (U.S. Md. Rt. #50) and on the center line of a drainage culvert leading across the said Boulevard, said point being also the Northwesterly corner of a lot, belonging to Jerome R. Plugge; thence (1) with the Easterly side-line of said State Boulevard, North zero degrees thirty-five minutes West, two hundred seventy-six and sixty-five one-hundredths feet (N. 0° 35' W. 276.65 ft.) to an iron pipe and the Southwesterly corner of a lot formerly belonging to Alfred P. Quimby; thence (2) with the said Quimby lot, North eighty-eight degrees thirty-seven minutes East, sixty-seven and thirty-five one-hundredths feet (N. 88° 37' E. 67.35 ft.) to an iron pipe and the Westerly line of lands recently conveyed to Walter C.V. Grubb, Sr.; thence (3) with the said Grubb land, South twenty-four degrees thirty-two minutes East, three hundred fifty-four and ninety-five one-hundredths feet (S. 24° 32' E. 354.95 ft.) to an iron pipe in the middle of a ditch and at or near the common corner of the herein described tract, the lands formerly of Walter C.V. Grubb, Sr., and the lands of Jerome R. Plugge; thence (4) with the middle of the ditch and the Northerly line of the said Pluggs lot, North sixty-two degrees sixteen minutes West, sixty-four and eight-tenths feet (N. 62° 16' W. 64.8 ft.); thence (5) with the same, North eighty-eight degrees fifty-two minutes West, forty-one feet (N. 88° 52' W. 41.0 ft.); thence (6) still with the same, North fifty-six degrees fifty-two minutes West, twenty-three and fifty-nine one-hundredths feet (N. 56° 52' W. 23.59 ft.); thence (7) with the same, South eighty-eight degrees six minutes West, seventy-seven and seventy-eight one-hundredths feet (S. 88° 6' W. 77.78 ft.) to a point at or near the Easterly end of the culvert hereinbefore mentioned; thence (8) with the center of said culvert and still with the lands of the said Plugge, North seventy-eight degrees six minutes West, sixteen and four-tenths feet (N. 78° 6' W. 16.4 ft.) to the place of beginning; containing eight hundred eighty-four one-thousandths of an acre (0.884 A.).

The above described lot or parcel of land is more particularly shown upon a map made by Kastenhuber and Anderson, Civil Engineers and Surveyors, entitled: "MAP OF QUIMBY VILLAGE LOT SURVEYED FOR JOHN AND ELMA M. DYER AT THE VILLAGE OF SKIPTON TALBOT COUNTY MARYLAND. SCALE: 50' TO 1", NOVEMBER, 1953", which map is recorded among the Plat Record Books of Talbot County in Plat Liber No. 8, folio 84.

PARCEL NO. 2

ALL that lot or parcel of land near the Village of Skipton, Talbot County, Maryland, described as follows, that is to say:

BEGINNING for the same at an iron pipe driven on the Easterly sideline of a Right-of-Way of the State Boulevard leading from Cambridge to Chesapeake Bay Bridge (U.S. Route No. 50) and at a point which measures three hundred forty-eight feet (348 ft.) Southwardly along the said Easterly sideline from the intersection thereof with the Southerly side of the Right-of-Way of the approach apron at the junction of said State Boulevard with the Old State Road leading from Easton to Centreville (MD Route No. 662); thence (1) with the Easterly side-line of said State Boulevard, South zero degrees, thirty-five minutes East, one hundred eighty-two and eighty-six one-hundredths feet (S. 0° 35' E. 182.86 ft.) to an iron pipe and the northerly line of lands known as "Quimby Village", reserved by Alfred C. Quimby; thence (2) with said reserved land North eighty-eight degrees, thirty-seven minutes East, two hundred seventy-seven and thirty-five one-hundredths feet (N. 88° 37' E. 277.35 ft.) to an iron pipe driven on the Westerly sideline of the Old State Road leading from Easton to Centreville; thence (3) with the Westerly sideline of the last mentioned State Road, North twenty-three degrees forty-nine minutes West, one hundred ninety-seven and eight-tenths feet (N. 23° 49' W. 197.8 ft.) to an iron pipe and the Southerly line of a lot now or formerly belonging to Ray J. Kapisak; thence (4) with said Kapisak land South eighty-eight degrees thirty-seven minutes West, one hundred ninety-nine and three tenths feet (S. 88° 37' W. 199.3 ft.) to the place of beginning.

CONTAINING one acre of land.

The above described lot or parcel of land being more particularly shown upon a map entitled: "MAP OF 'QUIMBY VILLAGE' LOT SURVEYED FOR ALFRED P. QUIMBY AT THE VILLAGE OF SKIPTON, TALBOT COUNTY, MARYLAND SCALE: 50' TO 1" SEPTEMBER 1950", and recorded among the Plat Records of Talbot County, Maryland in Liber No. 4, folio 82.

LIBER2 I 6 6 FOLIO I 3 7

PARCEL NO. 3

ALL that lot of land at Quimby Village, near the Village of Skipton, Talbot County, Maryland, and described as follows:

BEGINNING at an iron pipe driven on the Westerly sideline of the Old Centreville Road (formerly U.S. MD #213) said point being also the Southeasterly corner of the lands belonging to Theodore Grubb; thence (1) with the Westerly sideline of said Old Centreville Road, S. 31° 10' E. 105 feet to an iron pipe and the Northerly line of lands reserved by Alfred C. Quimby; thence (2) with the said reserved land, S. 76° 07' W. 223.75 feet to an iron pipe driven near the head of and in the bed of a stream; thence (3) with the lands now belonging to John Dyer, N. 24° 32' W. 144.95 feet to an iron pipe and a common corner of the herein described tract, lands of John Dyer and lands of Theodore Grubb; thence (4) with said Grubb's land, N. 87° 0' E. 223.5 feet to the place of beginning, containing 0.603 acres, according to the Certificate of Survey of Kastenhuber and Anderson, dated July 26, 1955, and shown on a plat made by Kastenhuber and Anderson in July, 1955, entitled: "MAP OF QUIMBY VILLAGE PURCHASED BY JEROME H. PLUGGE TALBOT COUNTY MARYLAND", which plat is unrecorded.

PARCEL NO. 4

ALL that lot, tract or parcel of land situate, lying and being in the Fourth Election District of Talbot County, Maryland, in the area formerly known as "Quimby Village" and more particularly described as follows:

BEGINNING for the same at an iron pipe on the highway formerly known as Maryland Route 213 and now known as Maryland Route 662, joining the property formerly of Alfred P. Quimby and now of Charles R. and Constance M. Rathell, and running along said highway in a southerly direction a distance of 210 feet; thence westwardly a distance of 210 feet; thence northwardly a distance of 210 feet; thence eastwardly a distance of 210 feet to the place of beginning, containing the quantity of one acre of land, more or less.

BEING the same property conveyed unto Charles R. Rathell, Jr., individually, as to an undivided thirty-nine percent (39%) interest as tenant in common and unto Constance M. Rathell, individually, as to an undivided sixty-one percent (61%) interest as tenant in common from Charles R. Rathell, Jr. and Constance M. Rathell, his wife, by Deed November 16, 1975 and recorded among the Land Records of Talbot County, Maryland in Liber 500, folio 603. The said Charles R. Rathell, Jr. having died prior hereto, thereby vesting his interest in the property to Charles R. Rathell, III and Jeffrey D. Rathell, Sr., Trustees of the Residuary Trust U/W of Charles R. Rathell, Jr.

ALSO BEING the same property conveyed unto Charles R. Rathell, Jr., individually, as to an undivided thirty-nine percent (39%) interest as tenant in common and unto Constance M. Rathell, individually, as to an undivided sixty-one percent (61%) interest as tenant in common from Katherine E. Grubb, by Deed August 25, 1980 and recorded among the Land Records of Talbot County, Maryland in Liber 548, folio 63. The said Charles R. Rathell, Jr. having died prior hereto, thereby vesting his interest in the property to Charles R. Rathell, III and Jeffrey D. Rathell, Sr., Trustees of the Residuary Trust U/W of Charles R. Rathell, Jr.

Mary Ann Shortall, Clerk
Circuit Court For Talbot County
11 N. Washington St., Suite 16
Easton, Maryland 21601

License and Recording
(410) 822-2611 Ext. 4

```
LR - DOT/MTG Recording
Fee - RT only     20.00
Grantor Name: rathell
Reference/Control #:
2166/130
LR - Recordation Tax
                   0.00
LR - Surcharge    40.00
========================
SubTotal:         60.00
========================
Total:           845.00
#2682891-57
04/16/2014  03:42
                  CC20-DR
#2682891 CC0205 -
Talbot
County/CCQ2.05.01 -
Register 01 892
```

DOCUMENT VALIDATION
(excluded from page count)

LIBER2 I 6 6 FOLIO I 3 9

## State of Maryland Land Instrument Intake Sheet

[ ] Baltimore City    [ X ] County: Talbot

*Information provided is for the use of the Clerk's Office and State Department of Assessments and Taxation, and the County Finance Office only.*

(Type or Print in Black Ink Only All Copies Must Be Legible)

| 1 | Type(s) of Instruments | ( [ ] Check Box if Addendum Intake Form is Attached.) | | | |
|---|---|---|---|---|---|
| | | | Deed | Mortgage | Other | Other |
| | | 1 | Deed of Trust | Lease | | |

| 2 | Conveyance Check Box | | Improved Sale | Unimproved Sale | Multiple | Not an Arms- |
|---|---|---|---|---|---|---|
| | | | Arms-Length *[1]* | Arms-Length *[2]* | Arms Length *[3]* | Length Sale *[9]* |

| 3 | Tax Exemptions (if Applicable) Cite or Explain Authority | Recordation | |
|---|---|---|---|
| | | State Transfer | |
| | | County Transfer | |

| 4 | Consideration | | | | Amount | | Finance Office Use Only | |
|---|---|---|---|---|---|---|---|---|
| | Consideration and Tax Calculations | Purchase Price/Consideration | | $ | | Transfer and Recordation Tax Consideration | |
| | | Any New Mortgage | | $ | | Transfer Tax Consideration | $ |
| | | Balance of Existing Mortgage | | $ | | x ( ) % = | $ |
| | | Other: | | $ | | Less Exemption Amount - | $ |
| | | | | | | Total Transfer Tax = | $ |
| | | Other: | | $ | | Recordation Tax Consideration | $ |
| | | | | | | x ( ) per $500 = | $ |
| | | Full Cash Value | | $ | .00 | TOTAL DUE | $ |

| 5 | | Amount of Fees | | Doc. 1 | Doc. 2 | Agent: |
|---|---|---|---|---|---|---|
| | Fees | Recording Charge | | $ 20.00 | $ | |
| | | Surcharge | | $ 40.00 | $ | Tax Bill: |
| | | State Recordation Tax | | $ | $ | |
| | | State Transfer Tax | | $ | $ | C.B. Credit: |
| | | County Transfer Tax | | $ | $ | |
| | | Other | | $ | $ | Ag. Tax/Other: |
| | | Other | | $ | $ | |

| 6 | Description of Property | District | Property Tax ID No.(1) | Grantor Liber/Folio | Map | Parcel No. | Var. LOG |
|---|---|---|---|---|---|---|---|
| | | 04 | | | | | ( ) (5) |
| | SDAT requires submission of all applicable information. A maximum of 40 characters will be indexed in accordance with the priority cited in Real Property Article Section 3-104(g)(3)(i). | Subdivision Name | | Lot (3a) | Block(3b) | Sect/AR(3c) | Plat Ref. | SqFt/Acreage(4) |
| | | Location/Address of Property Being Conveyed (2) | | | | | | |
| | | 12681 OLD SKIPTON ROAD, QUEEN ANNE, MD 21625 | | | | | | |
| | | Other Property Identifiers (if applicable) | | | | Water Meter Account No. | | |
| | | Residential [ X ] or Non-Residential [ ] | Fee Simple [XX] or Ground Rent [ ] | | Amount: $ | | |
| | | Partial Conveyance? [ ] Yes [ X ] No | Description/Amt. of SqFt/Acreage Transferred: | | | | |
| | | If Partial Conveyance, List Improvements Conveyed: | | | | | |

| 7 | Transferred From | Doc. 1 – Grantor(s) Name(s) | Doc. 2 – Grantor(s) Name(s) |
|---|---|---|---|
| | | CONSTANCE M. RATHELL, individually and as TRUSTEES OF THE RESIDUARY TRUST U/W CHARLES R. RATHELL | |
| | | Doc. 1 – Owner(s) of Record, if Different from Grantor(s) | Doc. 2 – Owner(s) of Record, if Different from Grantor(s) |

| 8 | Transferred To | Doc. 1 – Grantee(s) Name(s) | Doc. 2 – Grantee(s) Name(s) |
|---|---|---|---|
| | | New Owner's (Grantee) Mailing Address | |
| | | 29432 BUCKINGHAM DRIVE, CORDOVA, MD 21625 | |

| 9 | Other Names to Be Indexed | Doc. 1 – Additional Names to be Indexed (Optional) | Doc. 2 – Additional Names to be Indexed (Optional) |
|---|---|---|---|
| | | THE NATIONAL BANK OF CAMBRIDGE | |

| 10 | Contact/Mail Information | Instrument Submitted By or Contact Person | [ X ] Return to Contact Person |
|---|---|---|---|
| | | Name: Mary T. Branham | |
| | | Firm: Venture Title Company | [ ] Hold for Pickup |
| | | Address: 117 Bay Street, Easton, MD 21601 | |
| | | Phone: | [ ] Return Address Provided |

**11** IMPORTANT: *BOTH* THE ORIGINAL DEED *AND* A PHOTOCOPY MUST ACCOMPANY EACH TRANSFER

| Assessment Information | Yes [ X ] No | Will the property being conveyed be the grantee's principal residence? |
|---|---|---|
| | Yes [ X ] No | Does transfer include personal property? If yes, identify: |
| | Yes [ X ] No | Was property surveyed? If yes, attach copy of survey (if recorded, no copy required) |

**Assessment Use Only - Do Not Write Below This Line**

[ ] Terminal Verification   [ ] Agricultural Verification   [ ] Whole   [ ] Part   [ ] Tran. Process Verification

| Transfer Number: | | Date Received: | | Deed Reference: | | Assigned Property No.: | | |
|---|---|---|---|---|---|---|---|---|
| Year | | | | Geo. | | Map | Sub | Block |
| Land | | | | Zoning | | Grid | Plat | Lot |
| Buildings | | | | Use. | | Parcel | Section | Occ. Cd. |
| Total | | | | Town Cd. | | Ex. St. | Ex. Cd. | |

REMARKS:

TALBOT COUNTY CIRCUIT COURT (Land Records) MAS 2166, p. 0130, MSA_CE91_2105. Date available 04/28/2014. Printed 03/16/2017.

:NTURE TITLE COMPANY
117 BAY STREET
EASTON, MD 21601

TALBOT COUNTY FINANCE OFFICE
RECORDATION TAX
AMT:
DATE: 3/23/2017
INITIALS:
Prop ID: 04-152999

**RECORDATION REQUESTED BY:**
The National Bank of Cambridge
Main Office
304 High Street
Cambridge, MD 21613

**WHEN RECORDED MAIL TO:**
The National Bank of Cambridge
Main Office
304 High Street
Cambridge, MD 21613

TALBOT COUNTY FINANCE OFFICE
RECORDATION TAX
AMT: $ 0
DATE: 4/16/2014
INITIALS: CCoco
Prep ID: 04-152999

Re-recorded to confirm the ownership of the Residuary Trust
UW of Charles R. Rathell, Jr.

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

## INDEMNITY
## DEED OF TRUST

**THIS INDEMNITY DEED OF TRUST** is dated April 10, 2014, among Charles R. Rathell, III, Jeffrey D. Rathell, Sr. and Constance M. Rathell, not personally but as Trustees on behalf of The Residuary Trust U/W of Charles R. Rathell, Jr.; and Constance M. Rathell ("Grantor"); The National Bank of Cambridge, whose address is Main Office, 304 High Street, Cambridge, MD 21613 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Charles H. Liddell, whose address is 304 High Street, Cambridge, MD 21613 and E. Thomas Merryweather, whose address is 204 High Street, Cambridge, MD 21613 (referred to below as "Trustee").

**RECITALS.** Lender as of the date of this Indemnity Deed of Trust has made a loan to Borrower in the principal amount of $750,000.00. Grantor has guaranteed all or part of Borrower's obligations of payment and performance with respect to the loan pursuant to a Guaranty of even date herewith and has agreed to secure the Guaranty by the execution of this Indemnity Deed of Trust.

**CONVEYANCE AND GRANT.** For valuable consideration, Grantor irrevocably grants and conveys to Trustee, in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Grantor's present and future right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; and all rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Talbot County, State of Maryland:

**See Attached Exhibit A**

**The Real Property** or its address is commonly known as 12681 Old Skipton Road, Queen Anne, MD 21657. The Real Property tax identification number is District 04; Account Number 152999; Map 0004; Grid 0018.

**CROSS-COLLATERALIZATION.** In addition to the Guaranty, this Deed of Trust secures all obligations, debts and liabilities, plus interest thereon, of either Grantor or Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**REVOLVING LINE OF CREDIT.** This Indemnity Deed of Trust secures the Indebtedness including, without limitation, a guaranty of a revolving line of credit, under which Lender may make advances to Borrower so long as Borrower complies with all the terms of the Note.

Grantor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS INDEMNITY DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PERFORMANCE OF A GUARANTY FROM GRANTOR TO LENDER, AND DOES NOT DIRECTLY SECURE THE OBLIGATIONS DUE LENDER UNDER THE NOTE AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THIS INDEMNITY DEED OF TRUST. THIS INDEMNITY DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (a) Grantor has the full power, right, and authority to enter into this Deed of Trust and to hypothecate the Property; (b) the provisions of this Deed of Trust do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (c) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (d) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Grantor shall strictly perform all of Grantor's obligations under the Guaranty and under this Deed of Trust.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Lender and Grantor agree that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be

# INDEMNITY DEED OF TRUST
## (Continued)

<div align="right">Page 2</div>

affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, lease-option interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Maryland law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due, except for the Existing Indebtedness referred to below, and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a fair value basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may require. Policies shall be written in form, amounts, coverages and basis acceptable to Lender and issued by a company or companies acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Deed of Trust, to the extent compliance with the terms of this Deed of Trust would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Deed of Trust for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Grantor's failure to comply with any obligation to maintain Existing Indebtedness in good standing as required below, or to discharge or pay when due any amounts Grantor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the

TALBOT COUNTY CIRCUIT COURT (Land Records) MAS 2166, p. 0131, MSA_CE91_2105. Date available 04/28/2014. Printed 03/16/2017.

# INDEMNITY DEED OF TRUST
## (Continued)

Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; or (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

Title. Grantor warrants specially that: (a) Grantor holds good and marketable title to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

Defense of Title. Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

Compliance With Laws. Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

Survival of Representations and Warranties. All representations, warranties, and agreements made by Grantor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Deed of Trust:

Existing Lien. The lien of this Deed of Trust securing the Indebtedness may be secondary and inferior to an existing lien. Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

No Modification. Grantor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Deed of Trust by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

Proceedings. If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

Application of Net Proceeds. If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

Current Taxes, Fees and Charges. Upon request by Lender, Grantor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

Taxes. The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

Subsequent Taxes. If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as Default, and Lender may exercise any or all of its available remedies for Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

Security Agreement. This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

Security Interest. Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place convenient to Lender and make it available to Lender promptly following Lender's request to the extent permitted by applicable law.

Addresses. The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

Further Assurances. At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Guaranty, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

Attorney-In-Fact. If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph. This power of attorney is coupled with an interest and shall not be affected by any actual disability of Grantor.

**FULL PERFORMANCE.** If Grantor shall strictly perform all of Grantor's obligations under the Guaranty and Grantor otherwise performs all the obligations imposed upon Grantor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall

execute and deliver to Grantor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Any reconveyance fee required by law shall be paid by Grantor, if permitted by applicable law.

**DEFAULT.** Default will occur if payment in full is not made immediately when due.

**RIGHTS AND REMEDIES ON DEFAULT.** If Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

Election of Remedies. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Deed of Trust, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

Accelerate Indebtedness. Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Borrower would be required to pay.

Foreclosure. With respect to all or any part of the Real Property, (a) the Trustee shall have the right to invoke the power of sale and Grantor hereby assents to the passage of a decree for the sale of the Real Property, and (b) Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law. Upon the sale of the Real Property, the proceeds shall be applied as follows: (a) first, to pay all costs, charges, and expenses attending the execution of this trust or any sale relevant hereto, including without limitation reasonable counsel fees to the attorneys representing the Trustee or Lender or both and a trustee's commission equal to the commission allowed trustees for making sales of property under decrees of the equity court having jurisdiction; (b) second, to pay any amounts expended or advanced by Lender to discharge obligations of Grantor under this Indemnity Deed of Trust and then to the payment of the Indebtedness owed with respect to the Guaranty, if such Indebtedness has matured and is due under the terms of the Guaranty, or if not, to be held in a demand account as a pledge fund (which shall be interest bearing for the benefit of the Grantor) up to the maximum sum, as determined by Lender, which could be due from Grantor under the Guaranty as security for the Indebtedness owed with respect to the Guaranty, and to be applied to the Indebtedness owed with respect to the Guaranty after a default under the Guaranty; and (c) the balance remaining, if any, shall be paid to Grantor, or to whomsoever shall be judicially determined to be entitled to the same.

UCC Remedies. With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

Collect Rents. Lender shall have the right, without notice to Grantor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

Appoint Receiver. Without notice to Grantor, Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness and Grantor hereby consents to the appointment of such a receiver. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount and whether or not such receivership is incidental to a proposed sale of the Property or otherwise. Employment by Lender shall not disqualify a person from serving as a receiver.

Tenancy at Sufferance. If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

Other Remedies. Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

Notice of Sale. Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

Sale of the Property. To the extent permitted by applicable law, Grantor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

Attorneys' Fees; Expenses. If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

Rights of Trustee. Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

Powers of Trustee. In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Grantor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

Obligations to Notify. Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Grantor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

Trustee. Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

Successor Trustee. Lender, at Lender's option, at any time hereafter and without prior notice and without specifying any reason, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office in the jurisdiction where this Deed of Trust has been recorded. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Grantor, the book and page where this Deed of Trust is recorded, and the name of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

Power to Act Separately. If more than one Trustee is named in this Deed of Trust, any Trustee may act alone, without the joinder of any other Trustee, to exercise any or all the powers given to the Trustees collectively in this Deed of Trust or by applicable law.

**NOTICES.** Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, if hand delivered, when actually received by telefacsimile (unless

TALBOT COUNTY CIRCUIT COURT (Land Records) MAS 2166, p. 0133, MSA_CE91_2105. Date available 04/28/2014. Printed 03/16/2017.

# INDEMNITY DEED OF TRUST
## (Continued)

otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, and as certified mail postage prepaid, bearing a postmark from the United States Postal Service, directed to the addresses shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

MISCELLANEOUS PROVISIONS. The following miscellaneous provisions are a part of this Deed of Trust:

Amendments. This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

Annual Reports. If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

Caption Headings. Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

Incorporation by Reference. The terms, conditions, and provisions of the Guaranty and Related Documents are incorporated by reference in this Deed of Trust to the same extent as if set forth in full in this Deed of Trust. Should any of the terms, conditions, and provisions of the Guaranty or of any other Related Document conflict with the terms, conditions, or provisions of this Deed of Trust, the Trustee or Lender shall select which of the terms, conditions, and provisions shall govern and control.

Merger. There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

Governing Law. This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Maryland without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of Maryland.

Choice of Venue. If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Dorchester County, State of Maryland.

Joint and Several Liability. All obligations of Grantor under this Deed of Trust shall be joint and several, and all references to Grantor shall mean each and every Grantor. This means that each Grantor signing below is responsible for all obligations in this Deed of Trust.

JURY WAIVER. LENDER AND GRANTOR EACH HEREBY WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH LENDER OR GRANTOR MAY BE PARTIES, ARISING OUT OF, OR IN ANY WAY PERTAINING TO THIS DEED OF TRUST. IT IS AGREED THAT THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTIONS OR PROCEEDINGS. THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY LENDER AND GRANTOR, AND LENDER AND GRANTOR EACH HEREBY REPRESENT THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. GRANTOR EACH FURTHER REPRESENTS THAT EACH HAS BEEN REPRESENTED IN THE SIGNING OF THIS DEED OF TRUST AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED OF EACH'S OWN FREE WILL, AND THAT EACH HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.

No Waiver by Lender. Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

Severability. If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

Successors and Assigns. Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their heirs, personal representatives, successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the Indebtedness.

Time is of the Essence. Time is of the essence in the performance of this Deed of Trust.

DEFINITIONS. The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

Beneficiary. The word "Beneficiary" means The National Bank of Cambridge, and its successors and assigns.

Borrower. The word "Borrower" means Rathell Farm Equipment Company, Inc. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

Deed of Trust. The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee.

Default. The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

Environmental Laws. The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

Existing Indebtedness. The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Deed of Trust.

Grantor. The word "Grantor" means Constance M. Rathell; and The Residuary Trust U/W of Charles R. Rathell, Jr..

Guaranty. The word "Guaranty" means the guaranty from Grantor to Lender, including without limitation a guaranty of all or part of the Note.

Hazardous Substances. The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

Improvements. The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the

TALBOT COUNTY CIRCUIT COURT (Land Records) MAS 2166, p. 0134, MSA_CE91_2105. Date available 04/28/2014. Printed 03/16/2017.

BOOK 1453 PAGE 405

## INDEMNITY DEED OF TRUST
### (Continued)

Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all obligations of Grantor under the Guaranty, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the obligations under the Guaranty and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means The National Bank of Cambridge, its successors and assigns.

**Note.** The word "Note" means the promissory note dated April 10, 2014, **in the original principal amount of $750,000.00** from Borrower to Lender, together with all modifications of and renewals, replacements, and substitutions for the promissory note or agreement. NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means Kim C. Liddell, whose address is 304 High Street, Cambridge, MD  21613 and E. Thomas Merryweather, whose address is 204 High Street, Cambridge, MD 21613 and any substitute or successor trustees.

EACH GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS INDEMNITY DEED OF TRUST, AND EACH GRANTOR AGREES TO ITS TERMS.

THIS DEED OF TRUST IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS DEED OF TRUST IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

**GRANTOR:**

_____ (Seal)
Constance M. Rathell, Individually

**THE RESIDUARY TRUST U/W OF CHARLES R. RATHELL, JR.**

By: _____ (Seal)
Charles R. Rathell, III, Trustee of The Residuary
Trust U/W of Charles R. Rathell, Jr.

By: _____ (Seal)
Jeffrey D. Rathell, Sr., Trustee of The Residuary
Trust U/W of Charles R. Rathell, Jr.

_____ (Seal)
Constance M. Rathell, Trustee of The Residuary
Trust U/W of Charles R. Rathell, Jr.

---

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF  Maryland                    )
                                       ) SS
COUNTY OF  Talbot                     )

On this day before me, the undersigned Notary Public, personally appeared Constance M. Rathell, to me known to be the individual described in and who executed the Indemnity Deed of Trust, and acknowledged that he or she signed the Deed of Trust as his or her free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this   10   day of   Apr.      , 20 14  .

By _____          Residing at   Centreville MD

Notary Public in and for  Q.A.Co. MD     My commission expires   11/3/14

---

### TRUST ACKNOWLEDGMENT

STATE OF  Maryland                    )
                                       ) SS
COUNTY OF  Talbot                     )

On this   10   day of   Apr.      , 20 14  , before me, the undersigned Notary Public, personally appeared Charles R. Rathell, III, Trustee of The Residuary Trust U/W of Charles R. Rathell, Jr.; Jeffrey D. Rathell, Sr., Trustee of The Residuary Trust U/W of Charles R. Rathell, Jr.; and Constance M. Rathell, Trustee of The Residuary Trust U/W of Charles R. Rathell, Jr., and known to me to be authorized trustees or agents of the trust that executed the Indemnity Deed of Trust and acknowledged the Deed of Trust to be the free and voluntary act and deed of the trust, by authority set forth in the trust documents or, by authority of statute, for the uses and purposes therein mentioned, and on oath stated that they are authorized to execute this Deed of Trust and in fact executed the Deed of Trust on behalf of the trust.

By _____          Residing at   Centreville MD

Notary Public in and for  Q.A. Co.  MD     My commission expires  11/8/14

**LIBER 2166 FOLIO 135**

**BOOK: 2453 PAGE: 406**

## INDEMNITY DEED OF TRUST
### (Continued)

Page 7

---

### LENDER CERTIFICATION

THIS IS TO CERTIFY that the foregoing Indemnity Deed of Trust was prepared by The National Bank of Cambridge, the party secured by the Indemnity Deed of Trust.

The National Bank of Cambridge

By: _Annette L. Harrison_
Annette L. Harrison

Its: **Assistant Vice President**

---

### AFFIDAVIT OF CONSIDERATION

STATE OF _Maryland_ )
) SS
_County_ OF _Talbot_ )

I HEREBY CERTIFY that on this _10_ day of _April_ , 20 _14_ before me, the undersigned, a Notary Public of the _State of Maryland_ in and for _County of Queen Anne_ , personally appeared _Katie Faison_ the agent of Lender, known to me or satisfactorily proven, who made oath or affirmation in due form of law that the consideration recited in the Deed of Trust is true and bona fide as set forth therein that he or she is the agent of Lender, and that he or she is duly authorized to make this affidavit.

WITNESS my hand and Notarial Seal.

_Mary T. Branham_
Notary Public

My Commission Expires: _11/3/14_

*(Notary Seal: MARY T. BRANHAM — NOTARY PUBLIC — QUEEN ANNE'S COUNTY, MD)*

---

### REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____ , Trustee

The undersigned is the legal owner and holder of all indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

Date: _____     Beneficiary: _____

By: _____

Its: _____

LASER PRO Lending, Ver. 13.4.0.034 Copr. Harland Financial Solutions, Inc. 1997, 2014.   All Rights Reserved.   - MD  H:\CFI\LPL\G01.FC
TR-374  PR-7

TALBOT COUNTY CIRCUIT COURT (Land Records) MAS 2166, p. 0136, MSA_CE91_2105. Date available 04/28/2014. Printed 03/16/2017.

# EXHIBIT A

Tract No. 1:

LEGAL DESCRIPTION

12681 OLD SKIPTON ROAD, CORDOVA, MARYLAND

PARCEL NO. 1

ALL that lot or parcel of ground, a portion of Quimby Village, situate, lying and being at Skipton, Chapel District of Talbot County, Maryland, and described according to a Certificate of Survey made by Kastenhuber and Anderson, Civil Engineers and Surveyors, dated November 11, 1953, as follows:

BEGINNING at an iron pipe driven on the Easterly side-line of the State Boulevard leading from Cambridge to the Chesapeake Bay Bridge (U.S. Md. Rt. #50) and on the center line of a drainage culvert leading across the said Boulevard, said point being also the Northwesterly corner of a lot, belonging to Jerome R. Plugge; thence (1) with the Easterly side-line of said State Boulevard, North zero degrees thirty-five minutes West, two hundred seventy-six and sixty-five one-hundredths feet (N. 0° 35' W. 276.65 ft.) to an iron pipe and the Southwesterly corner of a lot formerly belonging to Alfred P. Quimby; thence (2) with the said Quimby lot, North eighty-eight degrees thirty-seven minutes East, sixty-seven and thirty-five one-hundredths feet (N. 88° 37' E. 67.35 ft.) to an iron pipe and the Westerly line of lands recently conveyed to Walter C.V. Grubb, Sr.; thence (3) with the said Grubb land, South twenty-four degrees thirty-two minutes East, three hundred fifty-four and ninety-five one-hundredths feet (S. 24° 32' E. 354.95 ft.) to an iron pipe in the middle of a ditch and at or near the common corner of the herein described tract, the lands formerly of Walter C.V. Grubb, Sr., and the lands of Jerome R. Plugge; thence (4) with the middle of the ditch and the Northerly line of the said Plugge lot, North sixty-two degrees sixteen minutes West, sixty-four and eight-tenths feet (N. 62° 16' W. 64.8 ft.); thence (5) with the same, North eighty-eight degrees fifty-two minutes West, forty-one feet (N. 88° 52' W. 41.0 ft.); thence (6) still with the same, North fifty-six degrees fifty-two minutes West, twenty-three and fifty-nine one-hundredths feet (N. 56° 52' W. 23.59 ft.); thence (7) with the same, South eighty-eight degrees six minutes West, seventy-seven and seventy-eight one-hundredths feet (S. 88° 6' W. 77.78 ft.) to a point at or near the Easterly end of the culvert hereinbefore mentioned; thence (8) with the center of said culvert and still with the lands of the said Plugge, North seventy-eight degrees six minutes West, sixteen and four-tenths feet (N. 78° 6' W. 16.4 ft.) to the place of beginning; containing eight hundred eighty-four one-thousandths of an acre (0.884 A.).

The above described lot or parcel of land is more particularly shown upon a map made by Kastenhuber and Anderson, Civil Engineers and Surveyors, entitled: "MAP OF QUIMBY VILLAGE LOT SURVEYED FOR JOHN AND ELMA M. DYER AT THE VILLAGE OF SKIPTON TALBOT COUNTY MARYLAND. SCALE: 50' TO 1", NOVEMBER, 1953", which map is recorded among the Plat Record Books of Talbot County in Plat Liber No. 8, folio 84.

PARCEL NO. 2

ALL that lot or parcel of land near the Village of Skipton, Talbot County, Maryland, described as follows, that is to say:

BEGINNING for the same at an iron pipe driven on the Easterly sideline of a Right-of-Way of the State Boulevard leading from Cambridge to Chesapeake Bay Bridge (U.S. Route No. 50) and at a point which measures three hundred forty-eight feet (348 ft.) Southwardly along the said Easterly sideline from the intersection thereof with the Southerly side of the Right-of-Way of the approach apron at the junction of said State Boulevard with the Old State Road leading from Easton to Centreville (MD Route No. 662); thence (1) with the Easterly side-line of said State Boulevard, South zero degrees, thirty-five minutes East, one hundred eighty-two and eighty-six one-hundredths feet (S. 0° 35' E. 182.86 ft.) to an iron pipe and the northerly line of lands known as "Quimby Village", reserved by Alfred C. Quimby; thence (2) with said reserved land North eighty-eight degrees, thirty-seven minutes East, two hundred seventy-seven and thirty-five one-hundredths feet (N. 88° 37' E. 277.35 ft.) to an iron pipe driven on the Westerly sideline of the Old State Road leading from Easton to Centreville; thence (3) with the Westerly sideline of the last mentioned State Road, North twenty-three degrees forty-nine minutes West, one hundred ninety-seven and eight-tenths feet (N. 23° 49' W. 197.8 ft.) to an iron pipe and the Southerly line of a lot now or formerly belonging to Ray J. Kapisak; thence (4) with said Kapisak land South eighty-eight degrees thirty-seven minutes West, one hundred ninety-nine and three tenths feet (S. 88° 37' W. 199.3 ft.) to the place of beginning.

CONTAINING one acre of land.

The above described lot or parcel of land being more particularly shown upon a map entitled: "MAP OF 'QUIMBY VILLAGE' LOT SURVEYED FOR ALFRED P. QUIMBY AT THE VILLAGE OF SKIPTON, TALBOT COUNTY, MARYLAND SCALE: 50' TO 1" SEPTEMBER 1950", and recorded among the Plat Records of Talbot County, Maryland in Liber No. 4, folio 82.

PARCEL NO. 3

ALL that lot of land at Quimby Village, near the Village of Skipton, Talbot County, Maryland, and described as follows:

BEGINNING at an iron pipe driven on the Westerly sideline of the Old Centreville Road (formerly U.S. MD #213) said point being also the Southeasterly corner of the lands belonging to Theodore Grubb; thence (1) with the Westerly sideline of said Old Centreville Road, S. 31° 10' E. 105 feet to an iron pipe and the Northerly line of lands reserved by Alfred C. Quimby; thence (2) with the said reserved land, S. 76° 07' W. 223.75 feet to an iron pipe driven near the head of and in the bed of a stream; thence (3) with the lands now belonging to John Dyer, N. 24° 32' W. 144.95 feet to an iron pipe and a common corner of the herein described tract, lands of John Dyer and lands of Theodore Grubb; thence (4) with said Grubb's land, N. 87° 0' E. 223.5 feet to the place of beginning, containing 0.603 acres, according to the Certificate of Survey of Kastenhuber and Anderson, dated July 26, 1955, and shown on a plat made by Kastenhuber and Anderson in July, 1955, entitled: "MAP OF QUIMBY VILLAGE PURCHASED BY JEROME H. PLUGGE TALBOT COUNTY MARYLAND", which plat is unrecorded.

PARCEL NO. 4

ALL that lot, tract or parcel of land situate, lying and being in the Fourth Election District of Talbot County, Maryland, in the area formerly known as "Quimby Village" and more particularly described as follows:

BEGINNING for the same at an iron pipe on the highway formerly known as Maryland Route 213 and now known as Maryland Route 662, joining the property formerly of Alfred P. Quimby and now of Charles R. and Constance M. Rathell, and running along said highway in a southerly direction a distance of 210 feet; thence westwardly a distance of 210 feet; thence northwardly a distance of 210 feet; thence eastwardly a distance of 210 feet to the place of beginning, containing the quantity of one acre of land, more or less.

BEING the same property conveyed unto Charles R. Rathell, Jr., individually, as to an undivided thirty-nine percent (39%) interest as tenant in common and unto Constance M. Rathell, individually, as to an undivided sixty-one percent (61%) interest as tenant in common from Charles R. Rathell, Jr. and Constance M. Rathell, his wife, by Deed November 16, 1975 and recorded among the Land Records of Talbot County, Maryland in Liber 500, folio 603. The said Charles R. Rathell, Jr. having died prior hereto, thereby vesting his interest in the property to Charles R. Rathell, III and Jeffrey D. Rathell, Sr., Trustees of the Residuary Trust U/W of Charles R. Rathell, Jr.

ALSO BEING the same property conveyed unto Charles R. Rathell, Jr., individually, as to an undivided thirty-nine percent (39%) interest as tenant in common and unto Constance M. Rathell, individually, as to an undivided sixty-one percent (61%) interest as tenant in common from Katherine E. Grubb, by Deed August 25, 1980 and recorded among the Land Records of Talbot County, Maryland in Liber 548, folio 63. The said Charles R. Rathell, Jr. having died prior hereto, thereby vesting his interest in the property to Charles R. Rathell, III and Jeffrey D. Rathell, Sr., Trustees of the Residuary Trust U/W of Charles R. Rathell, Jr.

TALBOT COUNTY CIRCUIT COURT (Land Records) MAS 2166, p. 0138, MSA_CE91_2105. Date available 04/28/2014. Printed 03/16/2017.

Case 19-18716    Doc 20    Filed 08/30/19    Page 30 of 35

**Mary Ann Shortall, Clerk**
**Circuit Court For Talbot County**
11 N. Washington St., Suite 16
Easton, Maryland  21601

License and Recording
(410) 822-2611 Ext. 4

LR - DOT/MTG Recording
Fee - RT only    20.00
Grantor Name: rathell
Reference/Control #:
2166/130
LR - Recordation Tax
                    0.00
LR - Surcharge    40.00
====================
SubTotal:         60.00
====================
Total:           845.00
#2682891-57
04/16/2014   03:42
                  CC20-DR
#2682891 CC0205 -
Talbot
County/CC02.05.01 -
Register 01 892

LR - DOT/Mortgage
Recording Fee    75.00
Name: Rathell
Ref: re-record of
2166/130
LR - DOT/Mortgage
Surcharge        40.00
====================
SubTotal:        115.00
====================
Total:           350.00
03/23/2017   01:02
                  CC20-MG
#B0197BB CC0205 -
Talbot
County/CC02.05.02 -
Register 02

DOCUMENT VALIDATION
(excluded from page count)

LIBER2166 FOLIO139

TALBOT COUNTY CIRCUIT COURT (Land Records) MAS 2166, p. 0139, MSA_CE91_2105. Date available 04/28/2014. Printed 03/23/2017.

# State of Maryland Land Instrument Intake Sheet

[ ] Baltimore City   [ X ] County: Talbot

*Information provided is for the use of the Clerk's Office and State Department of Assessments and Taxation, and the County Finance Office only.*
*(Type or Print in Black Ink Only All Copies Must Be Legible)*

**(1) Type(s) of Instruments**

| Deed | Mortgage | Other | Other |
|---|---|---|---|
| Deed of Trust | Lease | | |

**(2) Conveyance Check Box**

| Improved Sale Arms-Length [1] | Unimproved Sale Arms-Length [2] | Multiple Arms Length [3] | Not an Arms-Length Sale [9] |
|---|---|---|---|

**(3) Tax Exemptions (if Applicable)** Cite or Explain Authority
- Recordation:
- State Transfer:
- County Transfer:

**(4) Consideration and Tax Calculations**

| Consideration | Amount | | Finance Office Use Only |
|---|---|---|---|
| Purchase Price/Consideration | $ | Transfer and Recordation Tax Consideration | |
| Any New Mortgage | $ | Transfer Tax Consideration | |
| Balance of Existing Mortgage | $ | X ( )% = | |
| Other: | | Less Exemption Amount | |
| | | Total Transfer Tax | |
| Other: | $ | Recordation Tax Consideration | |
| | | X ( ) per $500 = | |
| Full Cash Value | $ .00 | TOTAL DUE | |

**(5) Fees**

| Amount of Fees | Doc. 1 | Doc. 2 | Agent: |
|---|---|---|---|
| Recording Charge | $ 20.00 | $ | |
| Surcharge | $ 40.00 | $ | Tax Bill: |
| State Recordation Tax | $ | $ | |
| State Transfer Tax | $ | $ | C.B. Credit: |
| County Transfer Tax | $ | $ | |
| Other | $ | $ | Ag. Tax/Other: |
| Other | $ | $ | |

**(6) Description of Property** SDAT requires submission of all applicable information. A maximum of 40 characters will be indexed in accordance with the priority cited in Real Property Article Section 3-104(g)(3)(i).

| District | Property Tax ID No.(1) | Grantor Liber/Folio | Map | Parcel No. | Var. LOG |
|---|---|---|---|---|---|
| 04 | | | | | |

Subdivision Name _____ Lot(3a) Block(3b) Sect/AR(3c) Plat Ref. Sq.Ft/Acreage(4)

Location/Address of Property Being Conveyed (2)
12681 OLD SKIPTON ROAD, QUEEN ANNE, MD 21625

Other Property Identifiers (if applicable) _____ Water Meter Account No.

Residential [ X ] or Non-Residential [ ] Fee Simple [X] or Ground Rent [ ] Amount: $
Partial Conveyance? [ ] Yes [X] No   Description/Amt. of SqFt/Acreage Transferred:

If Partial Conveyance, List Improvements Conveyed:

**(7) Transferred From**

| Doc. 1 - Grantor(s) Name(s) | Doc. 2 - Grantor(s) Name(s) |
|---|---|
| CONSTANCE M. RATHELL, individually and as | |
| TRUSTEES OF THE RESIDUARY TRUST | |
| U/W CHARLES R. RATHELL | |
| Doc.1 - Owner(s) of Record, if Different from Grantor(s) | Doc. 2 - Owner(s) of Record, if Different from Grantor(s) |

**(8) Transferred To**

| Doc. 1 - Grantee(s) Name(s) | Doc. 2 - Grantee(s) Name(s) |
|---|---|

New Owner's (Grantee) Mailing Address
29432 BUCKINGHAM LANE, CORDOVA, MD 21625

**(9) Other Names to Be Indexed**

| Doc. 1 - Additional Names to be Indexed (Optional) | Doc. 2 - Additional Names to be Indexed (Optional) |
|---|---|
| THE NATIONAL BANK OF CAMBRIDGE | |

**(10) Contact/Mail Information**

Instrument Submitted By or Contact Person [X] Return to Contact Person
Name: Mary T. Branham   [ ] Hold for Pickup
Firm: Venture Title Company
Address: 117 Bay Street, Easton, MD 21601   [ ] Return Address Provided
Phone:

**(11) IMPORTANT:** *BOTH THE ORIGINAL DEED AND A PHOTOCOPY MUST ACCOMPANY EACH TRANSFER*

**Assessment Information**
[ ] Yes [X] No   Will the property being conveyed be the grantee's principal residence?
[ ] Yes [X] No   Does transfer include personal property? If yes, identify:
[ ] Yes [X] No   Was property surveyed? If yes, attach copy of survey (if recorded, no copy required)

Assessment Use Only - Do Not Write Below This Line

| [ ] Terminal Verification | [ ] Agricultural Verification | [ ] Whole | [ ] Part | [ ] Tran Process Verification |
|---|---|---|---|---|
| Transfer Number: | Date Received: | Deed Reference: | Assigned Property No.: | Block |
| Year | 20 | 20 | Geo. | Map | Sub Block |
| Land | | | Zoning | Grid | Parcel |
| Buildings | | | Use | Parcel | Section |
| Total | | | Town Cd. | Ex. St. | Occ. Cd. |

REMARKS:

TSS380-00056

V-8433MTB

STATE OF MARYLAND, TALBOT COUNTY, TO WIT:

I HEREBY CERTIFY, that the aforegoing is truly taken and copied from LIBER 2166 FOLIO No.130 Land Records Book, one of the Land Record Books of the Circuit Court for Talbot County, Maryland, generated by the Mdlandrec.net System and that the legend at the left side of the page provides information concerning its entry and retrieval from the system that was not a part of the original record.

IN TESTIMONY WHEREOF, I hereunto subscribe my name and affix the seal of the Circuit Court for Talbot County at Easton, MD on this 16th day of March , 2017.

Mary Ann Shortall
**Clerk of the Circuit Court for Talbot County**



**MCALLISTER
DETAR
SHOWALTER
& WALKER**

Johnny Gilman
jgilman@mdswlaw.com
(410) 648-9105

## NOTICE OF ACCELERATION AND DEMAND FOR PAYMENT

March 13, 2019

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED
AND VIA FIRST CLASS U.S. MAIL**
Jeffrey D. Rathell, Sr., President
Rathell Farm Equipment Company, Inc.
12681 Old Skipton Road
Queen Anne, MD 21657

Constance M. Rathell
29432 Buckingham Drive
Cordova, MD 21625

Jeffrey D. Rathell, Sr.
29432 Buckingham Drive
Cordova, MD 21625

The Residuary Trust U/W of Charles R. Rathell, Jr.
Charles R. Rathell, III, Trustee
Jeffrey D. Rathell, Sr. Trustee
Constance M. Rathell, Trustee
501 Dutchmans Lane, Apt. 216
Easton, MD 21601

Re:    **Loan # xxxxx02145 ($437,994.49 Outstanding Principal Balance) secured by Indemnity Deeds of Trust on properties located at 12681 Old Skipton Road Queen Anne, MD 29432; 29477 Skipton Cordova Road Cordova, MD 21625; and 29432 Buckingham Drive Cordova, MD 21625**

Dear Ladies and Gentlemen:

On behalf of McAllister, DeTar, Showalter & Walker, I represent 1880 Bank (f/k/a The National Bank of Cambridge) (the "Lender") with respect to Loan # xxxxx02145 (the "Loan") and Loan Documents referenced above.

Rathell Farm Equipment Company, Inc. (the "Borrower") has incurred a Default under the Loan Documents. Consequently, the purpose of this letter is to demand immediate payment in full of all principal, interest, late fees, and all other sums due under the Loan Documents. The Default includes failure to meet the repayment terms of the Promissory Note dated April 10, 2014. Specifically, you failed to make the monthly payments due for December 9, 2018 (partial

**EXHIBIT**
**D**



payment received), January 9, 2019, February 9, 2019 and March 9, 2019 (no payments received). As of the date of this letter, Nine Thousand Five Hundred Eighty-Nine Dollars and Fifty Cents ($9,589.50) is due and owing for missed payments and late charges.

Because of the Default, the following amounts, plus all attorneys' fees and collection expenses incurred by the Lender in connection with the collection and enforcement of the Loan Documents, are immediately due and owing under the terms of the Loan Documents:

| | |
|---|---|
| Outstanding principal sum | $ 437,994.49 |
| Interest through and including March 11, 2019* | $ 9,274.84 |
| Late fees through and including March 11, 2019 | $ 470.66 |
| Total as of March 11, 2019 | $ 447,739.99 |

*Interest continues to accrue pursuant to the terms of the Note, and Lender reserves the right to collect interest at the applicable default rates and late charges. Additionally, Borrower and Guarantors are responsible for all costs of collection, including, without limitation, attorneys' fees.

Additionally, as a result of the Default, Lender is entitled to the full and cumulative exercise of all of its rights, remedies, defenses, elections, and objections under the Loan Documents as to the Borrower, the Guarantors, and as to any third party, at law or in equity, including, but not limited to, the right to enforce the Loan Documents and the right to obtain a judgment against the Borrower and Guarantors. You are hereby advised that Lender will immediately exercise all available set-off rights, and in addition, Lender reserves the right to exercise any and all other available rights and remedies, including initiating a foreclosure action against any collateral encumbered by the several/separate Indemnity Deed(s) of Trust.

Nothing in this notice is intended to, and nothing herein shall, modify any of the provisions of the Loan Documents, waive any of Lender's rights, remedies, and powers against Borrower and/or Guarantors or waive any events of default that may now exist or hereafter arise, and Lender hereby expressly reserves all of its rights, remedies, and powers under the Loan Documents, at law, in equity, or otherwise.

Lastly, this notice is not intended to, and shall not, be construed as an election of remedies or a waiver of Lender's right to exercise any prejudgment or self-help rights or remedies, or any other rights or remedies that may now or hereafter be available to Lender pursuant to the terms of the Loan Documents, or that are otherwise available at law or in equity. No delay by Lender in exercising any rights or remedies shall operate as a waiver of any rights or remedies that Lender may have. Any and all rights and remedies available to Lender shall be cumulative and may be exercised separately, successively, or concurrently at Lender's sole discretion.

All payments on the Loan should be sent to the following address:

<div align="center">

Gregory Olinde
1880 Bank
304 High Street
Cambridge, Maryland 21613

</div>



March 13, 2019
Page 3

The acceptance by Lender of any payments to the extent any payment(s) did not, or do not, represent timely or full payment of all amounts due under the Loan, including all accrued and unpaid interest, late fees, attorneys' fees, or other reimbursable expenses, shall not constitute a waiver by Lender of any rights and remedies that may exist under the Loan.

Please do not hesitate to contact me or Gregory Olinde at 443-225-4725 to discuss this matter further.

Sincerely,

Johnny Gilman

cc:    Gregory Olinde, Chief Lending Officer